# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF MASSACHUSETTS
# WESTERN DIVISION

|                                      |   |                        |
|--------------------------------------|---|------------------------|
| In re:                               | ) | Chapter 13             |
|                                      | ) | Case No. 25-30440-EDK  |
| DAVID T. MARRETT,                    | ) |                        |
| SANDY J. MARRETT,                    | ) |                        |
|                                      | ) |                        |
|                           Debtors    | ) |                        |
|                                      | ) |                        |

## MEMORANDUM OF DECISION

Before the Court is a Motion for Sanctions and Damages for Willful Violation of the Automatic Stay (the "Motion for Sanctions") filed by the debtors in this Chapter 13 case, David T. Marrett and Sandy J. Marrett (the "Debtors"), and two related motions for summary judgment. Through the Motion for Sanctions, the Debtors seek damages for alleged violations of the automatic stay imposed by section 362(a) of the United States Bankruptcy Code (the "Bankruptcy Code")[1] for certain actions taken with regard to real property located in Caribou, Maine. In order to determine whether the automatic stay was violated, the Court must first decide whether the property was property of the Debtors or property of the bankruptcy estate at the time the Debtors filed their bankruptcy case.

---

[1] *See* 11 U.S.C. §§ 101 *et seq.* All statutory references are to provisions of the Bankruptcy Code unless otherwise stated.

1

I.      FACTS AND TRAVEL OF THE CASE[2]

In September 2004, the Debtors borrowed funds from Aroostook County Federal Savings & Loan ("Aroostook") to finance the purchase of real property located at 35 York Street, Caribou, Maine (the "Property") and granted Aroostook a mortgage on the Property to secure the loan.[3] In November 2009, the Debtors refinanced their existing mortgage obligation, obtaining a new loan from Aroostook secured by a mortgage on the Property (the "Mortgage").[4] The Debtors have not resided at the Property since 2017.[5] They fell into default on the Mortgage in July 2021.[6] The Debtors were unable to cure the default and, in January 2022, Aroostook filed a complaint against the Debtors in Aroostook County Superior Court for foreclosure of the Property (the "Foreclosure Case").[7] In response, the Debtors filed an answer and asserted several counterclaims.[8]

---

[2] The facts are drawn from the parties' motions for summary judgment and other documents in the record of this case and the associated adversary proceeding number 25-03006. *See* Federal Rule of Civil Procedure 56(c)(3), made applicable by Federal Rules of Bankruptcy Procedure 7056 and 9014(c) (in ruling on summary judgment, "[t]he court need consider only the cited materials, but it may consider other materials in the record"); *see also, e.g., United States v. Saavedra (In re Saavedra),* No. 20-10742-T13, 2022 WL 1051092, at *5 (Bankr. D.N.M. Apr. 7, 2022).

[3] *See* Warranty Deed, Notice of Suppl. Authority and Procedural Development ("Notice of Suppl. Authority"), Ex. B, AP No. 25-3006, Dkt. No. 77; Letters Approving Mortgage Loan Request and Settlement Statement, Notice of Suppl. Authority, Ex. A-1, AP No. 25-3006, Dkt. No. 77.

[4] December 1, 2009 Mortgage and Settlement Statement, Notice of Suppl. Authority, Ex. A2, AP No. 25-3006, Dkt. No. 77.

[5] In Aroostook's Statement of Material Facts included with its motion for summary judgment, Aroostook asserted that the Debtors have not resided at the Property since 2017. In the Debtors' response, the Debtors objected to that assertion solely on the grounds of relevance. However, at the hearing on the Motion for Sanctions and motions for summary judgment, Sandy Marrett acknowledged that the Debtors have not resided at the Property since 2017. *See* Nov. 20, 2025 Hr'g Tr. 21:4-6, Dkt. No. 214.

[6] *See* September 14, 2021 35-Day Notice of Right to Cure Default, Compl., Ex. A-2, AP No. 25-3006, Dkt. No. 1.

[7] *See* Order on Mot. to Remand, Aroostook Mot. to Dismiss, Ex. 3, AP No. 25-3006, Dkt. No. 33.

[8] *See* Answer, Affirmative Defenses, and Countercl., Compl., Ex. B-1, AP No. 25-3006, Dkt. No. 1.

2

On August 16, 2022, Maine Superior Court Justice Stephen Nelson, sitting in Aroostook County, issued an order recusing himself from the Foreclosure Case and transferring the Foreclosure Case to the Penobscot County Superior Court (the "Recusal Order").[9] Approximately two weeks later, on August 31, 2022, Chief Justice Robert E. Mullen of the Maine Superior Court issued an Order acknowledging that the Foreclosure Case was to be transferred to Penobscot County and specifically assigning all matters related to the Foreclosure Case to Justice Bruce Mallonee (sitting in the Penobscot County Superior Court) (the "Special Assignment Order").[10]

In January 2023, the Debtors removed the Foreclosure Case to the United States District Court for the District of Maine.[11] However, on April 10, 2023, the District Court granted Aroostook's motion to remand, holding that the removal was untimely.[12] In January 2024, the Penobscot County Superior Court granted Aroostook's Motion for Summary Judgment on Count I for foreclosure.[13] And, in and order dated October 21, 2024, that Court granted a motion for

---

[9] The Recusal Order provided:

> It is hereby ORDERED:
>
> I hereby recuse myself from the [Foreclosure Case].
>
> In light of the recusal by the undersigned judge, it is in the interests of justice that this matter be transferred to the Penobscot County Superior Court and assigned to another jurist.
>
> The Clerk is directed to enter this Order upon the civil docket by reference pursuant to Rule 79(a) of the Maine Rules of Civil Procedure.

Recusal Order, Compl., Ex. M, AP No. 25-3006, Dkt. No. 1.

[10] *See* Special Assignment Order, Debtors Response to Aroostook County Federal Savings & Loan's Mot. for Summ. J., Ex. A-1, Dkt. No. 132.

[11] *See* Order on Mot. to Remand, Aroostook Mot. to Dismiss, Ex. 3, AP No. 25-3006, Dkt. No. 33.

[12] *Id.*

[13] *See* J. of Foreclosure and Sale, Aroostook County Federal Savings & Loan's Mot. for Summ. J., Ex. 1, Dkt. No. 106.

3

sanctions against the Debtors and dismissed the Debtors' counterclaims with prejudice.[14] Aroostook then filed a motion for final judgment in the Foreclosure Case.[15]

In November 2024, before final judgment entered, the Debtors filed a notice of appeal in the Supreme Judicial Court, Sitting as the Law Court (the "Law Court").[16] While the appeal was pending, however, the Law Court suspended Maine Rule of Appellate Procedure 3(b) to permit the Penobscot County Superior Court to take any action necessary to dispose of all motions then pending in the Foreclosure Case.[17] The Penobscot County Superior Court then entered a Judgment of Foreclosure and Sale in December 2024 (the "Foreclosure Judgment").[18]

On April 7, 2025, the Debtors moved to voluntarily withdraw their appeal pending before the Law Court.[19] The Debtors also "attempted to revive the [Foreclosure Case] in Aroostook County by filing a document entitled 'Motion to Proceed with Adjudication of Amended Counterclaim or, in the Alternative, Enter Default Judgment,' together with twenty-eight requests for default and default judgment."[20] The Law Court dismissed the Debtors' appeal on April 15,

---

[14] See Order Granting Countercl. Def.'s Mot. for Sanctions Against Countercl. Pls. David and Sandy Marrett, Debtors Response to Aroostook County Federal Savings & Loan's Mot. for Summ. J., Ex. F, Dkt. No. 132.

[15] See J. of Foreclosure and Sale, Aroostook County Federal Savings & Loan's Mot. for Summ. J., Ex. 1, Dkt. No. 106.

[16] See Dkt. R., Supreme Judicial Ct. Sitting as the Law Ct., Aroostook County Federal Savings & Loan's Mot. for Summ. J., Ex. 2, Dkt. No. 106.

[17] See id.

[18] See J. of Foreclosure and Sale, Aroostook County Federal Savings & Loan's Mot. for Summ. J., Ex. 1, Dkt. No. 106.

[19] See Order Regarding Future Filings, Aroostook County Federal Savings & Loan's Mot. for Summ. J., Ex. 3, Dkt. No. 106.

[20] Id.

2025.[21] All pending requests for relief filed in the Aroostook County Superior Court were addressed and denied by the Penobscot County Superior Court on May 2, 2025.[22]

On May 14, 2025, an Associate Clerk of the Penobscot County Superior Court signed a "Certificate by the Clerk" certifying that, with regard to the Foreclosure Judgment, "the applicable appeal has period expired without action or the final judgment has been entered after remand following appeal."[23] The Debtors have not redeemed the Property and Aroostook has not yet sold the Property.

On July 22, 2025, the Debtors (who reside in South Hadley, Massachusetts) filed a voluntary petition under Chapter 13 of the Bankruptcy Code in the District of Massachusetts. A week later, on July 29, 2025, the Debtors filed the Motion for Sanctions to which Aroostook objected.[24] After an initial hearing on the Motion for Sanctions, the Court afforded the parties an opportunity to file motions for summary judgment regarding whether the Property was property of the Debtors or property of the bankruptcy estate on the petition date, which both parties have done. Following a hearing on the Motion for Sanctions and the summary judgment motions, the Court took the matters under advisement.

---

[21] *Id.*

[22] *Id.*

[23] J. of Foreclosure and Sale, Aroostook County Federal Savings & Loan's Mot. for Summ. J., Aff. of Richard D. Soman, Dkt. No. 106.

[24] The Motion for Sanctions requests damages against Aroostook, Zurich Insurance, and their agents. Aroostook's objection to the Motion for Sanctions was filed on behalf of Aroostook and Solman & Hunter, P.A., counsel for Zurich Insurance. *See* Obj. to Mot. for Sanctions, Dkt. No. 31.

5

II.   POSITIONS OF THE PARTIES[25]

Through the Motion for Sanctions, the Debtors seek sanctions and damages for willful violations of the automatic stay based on the following alleged actions after the bankruptcy case was filed:

A. "No Trespassing" signs were posted [at the Property],
B. A real estate broker called the Debtor Dave Marrett about a foreclosure,
C. Attorney Richard Solman emailed [a writ of possession] with no reference to the stay,
D. [Aroostook] ignored the Debtors' response asserting the stay[.]

Mot. for Sanctions, Dkt. No. 14.[26]

In response, Aroostook claims that, pursuant to Maine law, Aroostook owned legal and equitable title in the Property at the time the bankruptcy case was filed as a result of the Foreclosure Judgment and the prepetition expiration of the statutory redemption period. Therefore, the Property was not property of the Debtors or property of the Debtors' bankruptcy estate, and any actions taken regarding the Property could not violate the automatic stay.

Relying on the axiomatic principle set forth in *Butner v. United States,* 440 U.S. 48 (1979), Aroostook asserts that the Debtors' interest in the Property is governed by applicable Maine law. And pursuant to Maine law, Aroostook argues that, at the time the Mortgage was granted, legal

---

[25] The positions of the parties are drawn from various pleadings, including: Mot. for Sanctions, Dkt. No. 14; Obj. to Mot. for Sanctions, Dkt. No. 31; Reply to Objs. Filed by Att'y Daniel J. Cummings, Dkt. No. 40; Debtor's Suppl. Reply to Objs. to Debtor's Mots. for Sanctions and to Enforce the Stay, Dkt. No. 89; Debtors' Emergency Mot. for Summ. J. Determining Property is Part of the Estate and Request to Cancel Nov. 20, 2025 Hr'g, Dkt. No. 98; Aroostook County Federal Savings & Loan's Mot. for Summ. J., Dkt. No. 106; Aroostook County Federal Savings & Loan's Opp'n to the Debtors' Mot. for Summ. J., Dkt. No. 113; Debtors Resp. to Aroostook County Federal Savings & Loan's Mot. for Summ. J., Dkt. No. 132; Aroostook County Federal Savings & Loan's Reply to to [sic] the Debtors' Opp'n to Mot. for Summ. J., Dkt. No. 140; Debtors Mot. for Clarification and Jurisdiction Determination, Dkt. No. 160; and Aroostook County Federal Savings & Loan's Obj. to the Debtors' Mot. for Clarification, Dkt. No. 164.

[26] The Debtors also alleged that Aroostook acquired a Writ of Possession; however, that action occurred prepetition, and thus could not be a violation of the automatic stay since the automatic stay was not yet in effect. *See* 11 U.S.C. § 362(a).

6

title to the Property was vested in Aroostook, while the Debtors retained equitable title — i.e., the right to redeem the Mortgage. While Aroostook concedes that the Debtors' appeal of the Foreclosure Judgment extended the time before the Foreclosure Judgment became final,[27] Aroostook contends that the Foreclosure Judgment became final once the Law Court dismissed the appeal on April 15, 2025, affording the Debtors until July 14, 2025 (the statutory 90-day redemption period) to redeem. Because the Debtors did not redeem the Property, Aroostook maintains that it held both legal and equitable title to the Property as of July 15, 2025. And while the Debtors retained a chose in action regarding the foreclosure sale and payment of liens and the right to any surplus, Aroostook says that the Debtors did not retain an interest in the Property itself on the petition date.

At the outset, the Debtors stress the fact that the deed to the Property remains in the Debtors' names and claim that they have obtained liability insurance for the Property. Relying on Me. Rev. Stat. tit. 14, § 6323, they argue that since no foreclosure sale has occurred and title transfers upon the completion of the statutory foreclosure process and a foreclosure sale, the Property is legally and equitably part of the bankruptcy estate.[28]

In response, Aroostook says that the fact that the Debtors have obtained liability insurance on the Property is irrelevant. Aroostook reiterates its position that the bank utilized the judicial

---

[27] In its Motion for Summary Judgment Aroostook asserted that the Debtors filed an appeal of the Foreclosure Judgment. This Court does not have the benefit of the pleadings in the appeal to know exactly what order was appealed, but observes that when the appeal was filed, the Foreclosure Judgment had not yet entered, 10 months had elapsed since the entry of summary judgment on foreclosure, and it was within a month of the order dismissing the Debtors' counterclaims. However, based on Aroostook's representation, this Court will assume the Debtors appealed the Foreclosure Judgment. At any rate, it is undisputed that there is no pending appeal of the Foreclosure Judgment and, pursuant to Maine Rule of Appellate Procedure 2B(c)(1), the time for filing such an appeal has passed.

[28] The Debtors also argued that Aroostook never filed a Motion for Relief from the automatic stay, but that was not in dispute. *See* Debtors' Emergency Mot. for Summ. J. Determining Property is Part of the Estate and Request to Cancel Nov. 20, 2025 Hr'g, Dkt. No. 98.

7

foreclosure procedure set forth under Maine law and foreclosed its Mortgage on the Property, notwithstanding that Aroostook has not yet sold the Property.

The main focus of the Debtors' argument, however, is their contention that the foreclosure process is not final. As a threshold matter, the Debtors argue that the "Foreclosure Judgment is Void for Lack of Jurisdiction."[29] Their jurisdictional argument is premised on the contention that the "transfer of the case from Aroostook to Penobscot County was legally invalid because it was based on an order issued by a recused judge who no longer held authority over the matter,"[30] and because the transfer did not comply with Maine's procedure for a change in venue pursuant to Me. Rev. Stat. tit. 14, § 508.[31]

The Debtors reference a multitude of legal concepts in an attempt to attack the Foreclosure Judgment on grounds that the transfer of the case was "void" or invalid — arguing, *inter alia*, that the transfer was an "ultra vires act," "without legal basis," "violated due process," and "void for lack of jurisdiction." Relying on *Kalb v. Feuerstein,* 308 U.S. 433 (1940), the Debtors maintain that "the foreclosure judgment entered in Penobscot County is void *ab initio*,"[32] and that all following actions were "without constitutional due process or subject-matter jurisdiction, violating both the Fourteenth Amendment and Article VI's Supremacy Clause."[33] And, because the Foreclosure Judgment is invalid, the Debtors say the Property became property of the bankruptcy

---

[29] Debtors Resp. to Aroostook County Federal Savings & Loan's Mot. for Summ. J., Dkt. No. 132.

[30] *Id.*

[31] *Id.*

[32] *Id.*

[33] Debtors Mot. for Clarification and Jurisdiction Determination, Dkt. No. 160.

estate (and thus subject to the provisions of the automatic stay) at the time the bankruptcy case was filed.[34]

Aroostook maintains that the transfer of the Foreclosure Case from Aroostook to Penobscot County was procedurally appropriate, as Me. Rev. Stat. tit. 14, § 508 provided the Maine judge the authority to transfer any civil action or proceeding from one county to another county, and notes that the Debtors have cited to no authority for the proposition that a recusing judge may not transfer venue of a case. Aroostook further argues that, although an order was not necessary after the Recusal Order, the Chief Justice of the Superior Court additionally entered the Special Assignment Order, transferring the case. Lastly, Aroostook says that the Maine Superior Court was the proper jurisdiction for the Foreclosure Case, and the transfer of the case from one county to another was a transfer of venue, which does not implicate the court's jurisdiction.

Apart from their "jurisdictional" argument, the Debtors also appear to insinuate that the proceedings in Maine Superior Court are not final for other reasons. For instance, the Debtors complain that Aroostook misrepresented the Law Court proceedings because the Debtors voluntarily withdrew their appeal as opposed to the Law Court making a substantive ruling of dismissal. The Debtors additionally assert that Aroostook failed to disclose motions that the Debtors filed in the Superior Court in April 2025 (the "Motions"), which the Debtors say are still pending. And in their Motion to Voluntarily Withdraw Appeal, the Debtors wrote that the motion "is made without prejudice to any rights or claims preserved by Appellants."[35] These assertions

---

[34] *See id.*; Debtor's Mot. to Suspend All Nov. 20, 2025, Hr'gs Pending Juristiction [sic] and Structural Due Process Defects, Dkt. No. 172.

[35] Mot. to Voluntarily Withdraw Appeal, Debtor's Suppl. Reply to Objs. to Debtor's Mots. for Sanctions and to Enforce the Stay, Ex. A, Dkt. No. 89.

9

Case 25-30440 Doc 239 Filed 02/19/26 Entered 02/19/26 16:29:33 Desc Main
Document Page 10 of 20

imply, without specifically stating, that by filing the Motions and using the limiting language in their Motion to Voluntarily Withdraw Appeal, the Foreclosure Judgment is not final.

In response to this presumed argument that the Foreclosure Case is still pending, Aroostook relies on the Superior Court's Order Regarding Future Filings, which found that the Motion to Adjudicate, filed by the Debtors in April 2025, was improper.[36]

Even if the Foreclosure Judgment were valid, the Debtors argued at the hearing on the motions for summary judgment that the statutory redemption period did not expire prepetition.[37] Relying on the May 14, 2025 Certificate by the Clerk, certifying that the Foreclosure Judgment was final, the Debtors calculate that the 90-day period to redeem would have expired postpetition, on August 12, 2025, and not on July 15, 2025 as asserted by Aroostook. Thus, the Debtors argue that the Property became part of the bankruptcy estate on the petition date.[38]

As noted earlier, Aroostook contends that the Foreclosure Judgment became final upon dismissal of the Debtors' appeal on April 15, 2025, and not on the date the Certificate by the Clerk was signed.

Additionally, although not raised in the Debtors' pleadings, Aroostook contends that the provisions of § 1322(c)(1) of the Bankruptcy Code did not bring the Property into the bankruptcy estate. Aroostook acknowledges that § 1322(c)(1) provides debtors the ability to cure a default on a lien on the debtor's principal residence until such residence is sold at a foreclosure sale notwithstanding applicable nonbankruptcy law. However, Aroostook argues that because the

---

[36] Order Regarding Future Filings, Aroostook County Federal Savings & Loan's Mot. for Summ. J., Ex. 3, Dkt. No. 106.

[37] *See* Nov. 20, 2025 Hrg. Tr. 8–13, Dkt. No. 214.

[38] *See id.* at 12:22–25.

Debtors have not resided at the Property since May 2017, the Property is not the Debtors' "principal residence," and § 1322(c)(1) does not apply.

III.   DISCUSSION

    A.   **Jurisdiction, Summary Judgment, and the Automatic Stay**

As an initial matter, to the extent that the Debtors are challenging *this* Court's jurisdiction, the Court notes that it unquestionably has jurisdiction over claims regarding alleged violations of the automatic stay. Jurisdiction over all civil proceedings arising under, arising in, or related to bankruptcy cases is conferred on the district court pursuant to 28 U.S.C. § 1334(b) and, pursuant to 28 U.S.C. § 157(a) and Local Rule 201 of the United States District Court for the District of Massachusetts, the District Court has referred all such cases and proceedings to the judges of the bankruptcy court for the District of Massachusetts. Motions seeking sanctions pursuant to § 362(k) for alleged violations of the automatic stay arise under the Bankruptcy Code and may be heard by the bankruptcy court "based on the express grant of jurisdiction to the bankruptcy courts in § 157(b)(1) that they 'may hear and determine all cases under title 11[.]'" *Healthcare Real Est. Partners, LLC v. Summit Healthcare Reit, Inc. (In re Healthcare Real Est. Partners, LLC),* 941 F.3d 64, 70 (3d Cir. 2019) (alteration in original).

Furthermore, as a contested matter governed by Federal Rule of Bankruptcy Procedure ("Bankruptcy Rule") 9014, the Motion for Sanctions is subject to Federal Rule of Civil Procedure ("Federal Rule") 56, made applicable by Bankruptcy Rule 7056. *See* Fed. R. Bankr. P. 9014(c)(1) (Bankruptcy Rule 7056 applies to contested matters). Accordingly, the Court afforded the parties the opportunity to file summary judgment motions related to the Motion for Sanctions. Pursuant to Federal Rule 56, "[t]he court shall grant summary judgment if the movant shows that there is

no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Here, the relevant and material facts are not in dispute.

The Debtors have moved for sanctions alleging violations of the automatic stay. Section 362(k) provides that "an individual injured by any willful violation of the [automatic stay] shall recover actual damages, including costs and attorneys' fees, and in appropriate circumstances, may recover punitive damages." 11 U.S.C. § 362(k)(1). The automatic stay of § 362(a) arose when the Debtors filed their bankruptcy case on July 22, 2025, and that section enjoined actions against the Debtors, property of the Debtors, and property of the bankruptcy estate. *See* 11 U.S.C. § 362(a)(1)–(8).

The commencement of the Debtors' bankruptcy case created a bankruptcy estate, defined under § 541(a) to include the legal and equitable interests of the Debtors in property as of the commencement of the bankruptcy case. Here, if the Property is determined to be neither property of the Debtors nor property of the estate, then any actions taken with respect to the Property would not violate the automatic stay. In turn, the question of whether the Property is property of the Debtors or property of the estate is resolved by reference to state law. *See Butner*, 440 U.S. at 55.

### B. Validity, Finality, and Effect of the Foreclosure Judgment

#### 1. Validity and Finality of the Foreclosure Judgment

The Debtors' underlying argument is that the Foreclosure Judgment issued by the Penobscot County Superior Court is "void" because Justice Nelson, having recused himself from the case, had no authority to transfer the Foreclosure Case from Aroostook County to Penobscot County. However, this Court is barred by the *Rooker-Feldman* doctrine[39] from adjudicating the validity of either the Foreclosure Judgment or the Recusal Order.

---

[39] *See generally Rooker v. Fidelity Tr. Co.*, 263 U.S. 413 (1923); *D.C. Ct. of Appeals v. Feldman*, 460 U.S. 462 (1983).

12

> The *Rooker-Feldman* doctrine preserves the Supreme Court's exclusive jurisdiction over "appeals from final state-court judgments," *Lance v. Dennis*, 546 U.S. 459, 463, 126 S. Ct. 1198, 163 L. Ed. 2d. 1059 (2006) (per curiam), by divesting lower federal courts of jurisdiction to hear certain cases brought by parties who have lost in state court, *see Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 291-93, 125 S. Ct. 1517, 161 L. Ed. 2d 454 (2005); *Coggeshall v. Mass. Bd. of Regist. of Psychologists*, 604 F.3d 658, 663 (1st Cir. 2010). Specifically, the doctrine applies to "cases brought by state-court losers complaining of injuries caused by state-court judgments [that were] rendered before the district court proceedings commenced and invit[e] district court review and rejection of those judgments." *Exxon Mobil*, 544 U.S. at 284.

*Klimowicz v. Deutsche Bank Nat'l Tr. Co.*, 907 F.3d 61, 64–65 (1st Cir. 2018) (alterations in original).

The *Rooker-Feldman* doctrine applies to "(1) a party who lost in a state-court judgment that (2) was rendered before the federal action commenced, where (3) the party complains of injuries caused by the state-court judgment and (4) invites [federal] court review and rejection of those judgments." *DuLaurence v. Telegen*, 94 F. Supp. 3d 73, 79 (D. Mass. 2015), *aff'd*, No. 15-1537, 2016 WL 10454553 (1st Cir. Nov. 30, 2016) (citing *Silva v. Massachusetts*, 351 F. App'x 450, 454 (1st Cir. 2009)).

All four elements are satisfied here. First, the Debtors lost in the state court Foreclosure Judgment. Second, the Foreclosure Judgment (and the Recusal Order) entered before this bankruptcy case commenced. Third, by attempting to invalidate the Recusal Order and avoid the import of the Foreclosure Judgment, the Debtors complain of alleged injuries caused by the Recusal Order and the Foreclosure Judgment. *See Klimowicz*, 907 F.3d at 65 (finding that "federal action pertain[ed] to injuries allegedly caused by" state court judgment where plaintiff attempted to challenge the validity of state court's foreclosure judgment). Fourth, the Debtors invite this Court to review the Recusal Order and the Foreclosure Judgment and declare them void. Therefore, the *Rooker-Feldman* doctrine applies to a review of the Recusal Order and Foreclosure Judgment, and the Court lacks subject matter jurisdiction to declare them void.

13

In addition, under principles of res judicata, a "judgment rendered in a state court is entitled to the same preclusive effect in federal court as it would be given within the state in which it was rendered." *Kittery Point Partners, LLC v. Bayview Loan Servicing, LLC (In re Kittery Point Partners, LLC)*, 623 B.R. 825, 838 (B.A.P. 1st Cir. 2021), *aff'd*, 858 F. App'x 386 (1st Cir. 2021) (quoting *Pinsoy v. Ahmed (In re Sonus Networks, Inc.)*, 499 F.3d 47, 56 (1st Cir. 2007)). Accordingly, "the preclusive effect of the [judgment from the state court] is determined under Maine law." *Id.* Under Maine law, a party "cannot again come forward in the same legal mission against the same parties to secure a remedy . . . previously denied." *Portland Water Dist. v. Town of Standish*, 940 A.2d 1097, 1099 (Me. 2008) (quoting *Harriman v. Border Tr. Co.*, 842 A.2d 1266, 1267 (Me. 2004)).

Res judicata "has two components: collateral estoppel, also known as issue preclusion, and claim preclusion." *Wilmington Tr. Co. v. Sullivan-Thorne*, 81 A.3d 371, 374 (Me. 2013) (quoting *Kurtz & Perry, P.A. v. Emerson*, 8 A.3d 677, 681 (Me. 2010)). Claim preclusion would apply here. "Claim preclusion bars relitigation if: (1) the same parties or their privies are involved in both actions; (2) a valid final judgment was entered in the prior action; and (3) the matters presented for decision in the second action were, or might have been[,] litigated in the first action." *Finch v. U.S. Bank, N.A.*, 307 A.3d 1049, 1058 (Me. 2024) (alteration in original) (quoting *Machias Sav. Bank v. Ramsdell*, 689 A.2d 595, 599 (Me. 1997)).

Claim preclusion would apply to any argument that the Foreclosure Judgment was improper. First, the prior action involved the same parties. Second, a final judgment entered in the prior action. While the Debtors' appeal initially stayed the entry of the final Foreclosure Judgment, the Law Court entered an order specifically permitting the trial court to take any action

14

necessary to dispose of all pending motions and to enter the judgment, which it did.[40] After the Foreclosure Judgment entered, the remedy for the Debtors, as with any party, to have the judgment deemed invalid was an appeal. *See U.S. Bank N.A., as Tr. for Structured Asset Inv. Loan Tr. Mortg. Pass-Through Certificates, Series 2005-4 v. Janelle*, No. 2:20-CV-00337-JAW, 2021 WL 5066037, at *8 (D. Me. July 16, 2021) ("If the Defendants disagreed with the Foreclosure Judgment, they should have challenged that decision in the Maine District Court or appealed that decision to a higher court . . . ."). Here, the Debtors initially did appeal but chose to withdraw the appeal before it was adjudicated. Once the appeal was dismissed, more than 21 days elapsed from the entry of the Foreclosure Judgment and, as a result, the Debtors forfeited their opportunity to appeal. *See* Me. R. App. P. 2B(c)(1) ("The time within which an appeal may be taken in a civil case shall be 21 days after the entry into the docket of a judgment . . . ."). Accordingly, the Foreclosure Judgment became final and binding on the parties and this Court.

Any claim that the Recusal Order was improper would also be barred by res judicata. While the Recusal Order transferring the case was most likely interlocutory and not appealable when entered, *see E. H. Parent, Inc. v. Aroostook Tr. Co.*, 408 A.2d 87, 88 (Me. 1979) ("[a]n order on a motion for transfer of venue is interlocutory and not appealable"), any claims regarding the validity of the transfer of the case could have, and should have, been raised in connection with an appeal of the Foreclosure Judgment.

After the entry of the Foreclosure Judgment, the Debtors filed several motions in the Maine state courts in an unsuccessful effort to seek relief from the Foreclosure Judgment. Those pleadings did not, and do not, affect the validity and finality of the Foreclosure Judgment. The Debtors provided no legal authority, and this Court has found none, to support the contention that

---

[40] Typically, when an appeal is docketed in the Law Court, the trial court is not permitted to take further action. *See* Me. R. App. P. 3.

filing motions after the Debtors' appeal was dismissed would suspend the effect of the Foreclosure Judgment. As Justice Mallonee explained in an order entered in June 2025, the Foreclosure Case was concluded: "[t]here is no legal relief available to the [Debtors] in this closed case."[41] And finally, any claims that the transfer of venue was improper "were, or might have been[,] litigated in the [Foreclosure Case]." *Finch*, 307 A.3d at 1058. Accordingly, the Debtors would be precluded under principles of res judicata from asserting claims related to the Recusal Order and the Foreclosure Judgment.

2. Expiration of the Redemption Period

Pursuant to Maine statutory law, once the Foreclosure Judgment issued, the Debtors had 90 days to cure the default and redeem the Property. *See* Me. Rev. Stat. tit. 14, §§ 6322, 6323. The Foreclosure Judgment entered on December 23, 2024, but the Foreclosure Judgment was then arguably stayed during the Debtors' appeal.[42] *See* Me. R. Civ. P. 62(e) ("the taking of an appeal from a judgment shall operate as a stay of execution upon the judgment *during the pendency of the appeal*" (emphasis supplied)). However, the Debtors filed a Motion to Voluntarily Withdraw Appeal,[43] and the appeal was dismissed on April 15, 2025.[44] Because Maine Rule of Civil Procedure 62(e) stayed the judgment only during the pendency of the appeal, the 90-day redemption period set forth in Me. Rev. Stat. tit. 14, §§ 6322 and 6323 commenced upon dismissal of the appeal.

---

[41] Order Regarding Future Filings, Aroostook County Federal Savings & Loan's Mot. for Summ. J., Ex. 3, Dkt. No. 106.

[42] *See supra* note 27.

[43] Mot. to Voluntarily Withdraw Appeal, Debtor's Suppl. Reply to Objs. To Debtor's Mots. For Sanctions and to Enforce the Stay, Ex. A, Dkt. No. 89; *see also* Dkt. R., Supreme Judicial Ct. Sitting as the Law Ct., Aroostook County Federal Savings & Loan's Mot. for Summ. J., Ex. 2, Dkt. No. 106.

[44] *See* Dkt. R., Supreme Judicial Ct. Sitting as the Law Ct., Aroostook County Federal Savings & Loan's Mot. for Summ. J., Ex. 2, Dkt. No. 106.

16

The Debtors have suggested that the redemption period would have commenced instead on May 14, 2025, the date the clerk signed a "Certificate by the Clerk" certifying that "the applicable appeal period has expired without action or the final judgment has been entered after remand following appeal."[45] However, nothing in the statute governing such certificates indicates that the redemption period would be calculated from the date of a clerk's certification. Section 2401, entitled "Recording requirements for proceedings involving real estate," provides only that an attested copy of any final judgment with the signed clerk's certificate is required before it is recorded in the appropriate registry of deeds. Me. Rev. Stat. tit. 14, § 2401. Further, the certification itself confirms only that a final judgment has entered; it does not specify the effective date of the judgment. Accordingly, pursuant to Me. Rev. Stat. tit. 14, §§ 6322 and 6323 and Me. R. Civ. P. 62(e), the Debtors had 90 days — from April 15, 2025 to July 14, 2025 — to redeem the Property. They did not.

### 3. Effect of the Foreclosure Judgment

"Under Maine law, a mortgage on real property is a conditional conveyance with legal title vested in the mortgagee." *Duprey v. Eagle Lake Water and Sewer Dist.*, 615 A.2d 600, 602 (Me. 1992) (citing *In re Roberts*, 26 B.R. 397 (Bankr. D. Me. 1983)). "The mortgagor retains only the right to possess the premises and the equity right of redemption." *Id.* (citing *Martel v. Bearce*, 311 A.2d 540, 543 (Me. 1973)).

"[I]n Maine . . . a mortgagor's state law rights in real estate expire at the conclusion of a pre-sale redemption period . . . ." *JPMorgan Chase Bank v. McKinney (In re McKinney)*, 344 B.R. 1, 4 (Bankr. D. Me. 2006) (citing Me. Rev. Stat. tit. 14, §§ 6322–6323). Thus, on July 15, 2025 (7 days prepetition), the Debtors lost their rights in the Property. Under Maine law, the foreclosing

---

[45] J. of Foreclosure and Sale, Aroostook County Federal Savings & Loan's Mot. for Summ. J., Ex. 1, Dkt. No. 106.

17

party (here, Aroostook) is required to sell the Property and file a report of sale and the disbursement of the proceeds therefrom, and the Debtors retain the right to contest any accounting. *See* Me. Rev. Stat. tit. 14, § 6324. But "that right is a personal property interest (a chose in action), not a right in the real estate." *Schink v. Stephens (In re Stephens)*, 221 B.R. 290, 297 n.17 (Bankr. D. Me. 1998) (citations omitted); *see also* Me. Rev. Stat. tit. 14, § 6324 ("any such challenge may be for money only and does not affect the title to the real estate purchased by the highest bidder at the public sale").

Therefore, as of the Petition date, in accordance with Maine law, the Debtors retained no rights in the Property and possessed only a chose in action to contest the accounting from any eventual sale of the Property. Accordingly, any rights in the Property, whether of the Debtors or of the eventual bankruptcy estate, were lost upon the expiration of the statutory redemption period on July 15, 2025.

C. **Applicability of § 1322(c)(1)**

While not raised by the Debtors, the Court is also mindful of § 1322(c)(1) of the Bankruptcy Code, which provides: "notwithstanding subsection (b)(2) and applicable nonbankruptcy law – (1) a default with respect to, or that gave rise to, a lien on the debtor's principal residence may be cured under paragraph (3) or (5) of subsection (b) until such residence is sold at a foreclosure sale that is conducted in accordance with applicable non bankruptcy law." In short, § 1322(c)(1) allows a debtor to cure a default on a mortgage on a principal residence if the property had not been sold at a "foreclosure sale" as of the petition date.

In anticipation of any argument that may be raised under § 1322(c)(1) (i.e., that the Debtors would have a right to cure and maintain the mortgage since the Property has not yet been "sold"), Aroostook has argued that the provision would not apply because the Property was not the Debtors' principal residence.

18

Assuming, without deciding, that § 1322(c)(1) could potentially apply under similar circumstances and allow a debtor to retain rights under § 1322(c)(1) notwithstanding the expiration of the redemption period in a judicial foreclosure state, the Court concludes that § 1322(c)(1) could not operate to bring the Property into the bankruptcy estate or to create rights in the Property in favor of the Debtors under the circumstances of this case for several reasons.

First, any argument that the Property was property of the bankruptcy estate or of the Debtors pursuant to § 1322(c)(1) was waived. At oral argument on the parties' summary judgment motions on the Motion for Sanctions, Sandy Marrett was adamant that the Property is the Debtors' principal residence but articulated no argument in the pleadings or at oral argument that § 1322(c)(1) applies. "[I]ssues . . . unaccompanied by some effort at developed argumentation[] are deemed waived." *González v. Banco Popular De Puerto Rico (In re Cancel)*, 7 F.4th 23, 27 n.3 (1st Cir. 2021) (alterations in original) (quoting *United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990)). Therefore, any argument that § 1322(c)(1) applies is deemed waived. Second, the Court notes that the Debtors' proposed Chapter 13 plan does not include curing arrears and maintaining postpetition payments on Aroostook's mortgage on the Property as contemplated by § 1322(c)(1).

Most importantly, however, the Court concludes that the Property did not serve as the Debtors' "principal residence" within the meaning of § 1322(c)(1) at the time this case was filed. In its statement of material facts, Aroostook provided a list of addresses where the Debtors had resided since approximately 2017—none of which were the Property. The Debtors did not dispute that representation, instead objecting on grounds that that factual assertion was irrelevant. Accordingly, it is undisputed that the Debtors have not resided in the Property since 2017 and, according to the Debtors' voluntary petition, the Debtors resided in South Hadley, Massachusetts on the petition date.

While this Court was unable to locate any case interpreting the meaning of "debtor's principal residence" in the context of § 1322(c)(1), § 101(13A) provides: "[t]he term 'debtor's principal residence' – (A) means a residential structure if used as the principal residence by the debtor, including incidental property . . . ." It is undisputed by the Debtors that the Property was not "used as" the Debtors' principal residence since 2017 or when this case was filed. Therefore, even if the argument was not deemed waived, the Court would conclude that § 1322(c)(1) does not apply, because as of the petition date, the Property was not being "used as" the Debtors' principal residence.

IV.    CONCLUSION

For all the foregoing reasons, the Debtors' Motion for Sanctions and the Debtors' motion for summary judgment related thereto will be denied. Aroostook's motion for summary judgment regarding the Motion for Sanctions will be granted. The Property was not property of the bankruptcy estate or property of the Debtors at the time the Debtors' bankruptcy case was filed. Accordingly, actions taken with regard to the Property could not have violated the automatic stay. Orders in conformity with this memorandum will issue forthwith.

DATED: February 19, 2026             By the Court,

_____
Elizabeth D. Katz
United States Bankruptcy Judge